## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                    **CASE NO.:  5:06cv179/MCR/MD**

**KINLEY HOWARD**

_____/

## O R D E R

       This cause comes on for consideration upon the magistrate judge's report and recommendation dated September 12, 2006.  The defendant previously has been furnished a copy of the report and recommendation and has been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1), and I have made a de novo determination of those portions to which an objection has been made.

       Having considered the report and recommendation and any objections thereto timely filed by the parties, I have determined that the report and recommendation should be adopted.

       Accordingly, it is now ORDERED as follows:

       1.     The magistrate judge's report and recommendation is adopted and incorporated by reference in this order.

       2.     The motion to vacate, set aside or correct sentence and accompanying pleadings are TRANSFERRED to the United States District Court for the District of Columbia.

       DONE AND ORDERED this 12th day of October, 2006.

                s/ *M. Casey Rodgers*
                **M. CASEY RODGERS**
                **UNITED STATES DISTRICT JUDGE**

AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

5:06CV179-MCR-MD

| **United States District Court** | District |
| District of Columbia | |

| Name of Movant | Prisoner No. | Case No. |
| Howard, Kinley | 247911016 | 02cr79(RBW) & |
| Place of Confinement | | Civ 01-706 (RBW) |
| ~~Federal Prison Camp 110 Raby Ave Pensacola, Fl. 32509-5127~~ | | |

PO Box 16105 Panama City, Fl 32406-6105

| UNITED STATES OF AMERICA | V. | Kinley W. Howard |
| | | (name under which convicted) |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack __District Court__

   District of Columbia, Washington, D.C.

2. Date of judgment of conviction _____Sept. 5, 2002_____

3. Length of sentence_____46 months_____

4. Nature of offense involved (all counts) _Mail Fraud (2 counts), Wire Fraud (1 count) &_

   Money Laundering (3 counts).

5. What was your plea? (Check one)
   (a) Not guilty     XXX
   (b) Guilty     ☐
   (c) Nolo contendere     ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   __N/A__

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury     XXX
   (b) Judge only     ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

U.S. DISTRICT COURT
NORTHERN DISTRICT FL.
TALLAHASSEE

06 SEP -5 PM 2: 44

FILED

(2)

9. If you did appeal, answer the following:

   (a) Name of court____District of Columbia, Court of Appeals_____

   (b) Result ____Affirmed in part; Reversed in part; remanded for resentencing

   (c) Date of result ____December 9, 2003_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒ X

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court ____N/A_____

      (2) Nature of proceeding _____

      (3) Grounds raised_____

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ☐ No ☐

      (5) Result_____

      (6) Date of result _____

   (b) As to any second petition, application or motion give the same information:

      (1) Name of court _____

      (2) Nature of proceeding _____

      (3) Grounds raised_____

A.O 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☐
(2) Second petition, etc.     Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: SEE ATTACHED DOCUMENT WITH ENCLOSURES _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

B. Ground two: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

C. Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

AO 243 (Rev. 5/85)

_____

_____

D. Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☒ No ☐      D.C. Appellate Court

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing ~~Harvey~~ Volzer, Esq., Shaughnessy, Volzer & Gagner,

~~P.C., 1101~~ Fifteenth Street, N.W.; Suite 202; Washington, D.C. 20005

(b) At arraignment and plea ___ same as above _____

_____

(c) At trial ___ same as above _____

_____

(d) At sentencing ___ same as above _____

_____

(6)

(e) On appeal ____ Brian Shaughnessy, Esq. (same address as Volzer above)

(f) In any post-conviction proceeding __Harvey Volzer, Esq. and Larry Fischer,____

Nokesville, VA._____

(g) On appeal from any adverse ruling in a post-conviction proceeding ___ Harvey Volzer, Esq.__

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____ N/A _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____
(date)
August 13, 2006

_____
Signature of Movant
Dr. Kinley W. Howard

August 13, 2006

Dear Judges,

## 5:06CV179-MCR-MD

Please allow this document to serve as a cover letter and attachment to my 2255. The original 2255 was drafted while I was incarcerated and is geared toward my being released and the conviction overturned. Some changes have been made since I have been released from confinement for over a year.

It is ironic that Judge Reggie Walton allowed my trial to go forth with charges he told the prosecutors would be overturned if I were convicted of those charges. As the record stands, I was convicted of multiple counts of Money Laundering, and Judge Walton overturned the jury verdict on these multiple counts. These counts and the remaining Mail/Wire Fraud counts that continue to stand of which I am asking this Court to vacate and clear my record. This entire matter was a civil not criminal matter and never should have turned into such.

In one of the Court transcripts I reviewed, the Prosecutors stated the Money Laundering charges were dropped a before trial. This is an absolute lie. As noted above, Judge Walton overturned the jury verdict on these multiple counts before sentencing. The prosecutors used these charges to justify seizing personal properties and subsequently justify a separate civil suit.

06 SEP -5 PM 2: 44

FILED

During the initial resentencing hearing a Court officer testified before the Court he had spoken to Mrs. Judy Howard to get an address for my release as Judge Walton had decided to release me pending my continued appeal. The Court officer testified Judy Howard stated she would not give him an address as she planned to divorce me. Also, he testified she stated I had either shot or attempted to shoot her with a weapon in the past. I recently spoke with Judy (we are now divorced) and she said she never made such a statement. Someone is lying. Judy has no reason to lie to me now. Therefore, I have to believe the Court office lied to the Court to prevent my release. He should be criminally prosecuted.

After the Appellate Court overturned only part of my conviction on direct appeal, I was disappointed. My appellate attorneys were so sure the Court would vacate the remaining portion of my case, they failed to include critical information. I asked them about this and they said these issues were frivolous. However, I wrote Judge Walton and he agreed with me and subsequently appointed a Federal Public Defender in D.C. to review this information and assist me with filing this 2255 Writ of Habeas Corpus.

The Federal Public Defender attorneys were very interested in my case initially. I was suppose to be contacted by one attorney according to Neil Jaffee, Esq, the original attorney who reviewed my case. She never contacted my. However, Mr. Jaffe had extensive discussion and contact with Harvey Volzer, Esq, my original attorney. I even received an e-mail from Mr. Volzer alluding to the fact the Federal Public Defender was

not going to assist me with filing this 2255 even before Mr. Jaffe had informed me.
Somehow, I smell a rat as my 2255 includes ineffective counsel.

Also, the Court should note I received an e-mail from Mr. Volzer stating his office had
retrieved my files from their remote storage site and they had been sitting in his office for
more than 2 weeks and the Public Defenders office had yet to pick up my files to review.
I finally paid a courier service to deliver the files. Then when I asked questions during a
period of time, I was told they had not had time to review my files. Finally, I get an e-
mail saying I had no issues. They could not have possibly reviewed my files in such a
short period of time. I think they are so busy they just blew me off. Now it is too late to
retain a private attorney to review the files before the filing deadline.

I sent Neil Jaffe, Esq, multiple e-mails with important information including a request for
DNA tests to determine if Mildred Powell is my biological mother. Mr. Volzer had told
me early on this entire case was null and void if Mildred Powell was indeed my
biological mother. Mr. Jaffe never acted on any of my request!!! Also, it should be noted
the materials were returned at the end of July, 2006 (see attached letter). This did not
allow me time to secure a private attorney to assist me with this matter. It appears
Counsel did not want me to file this Motion in a timely manner, and has done everything
possible to keep me from meeting this filing deadline.

The U.S. Army investigated my situation, and upon release from incarceration, selected and promoted me to Colonel (see attached documents). I continued to drill in an active status until my MRD (Mandatory Removal Date) last month.

A similar situation occurred with my Medical and Nurse Practitioner licenses in Florida. After false claims were made against me, the Board of Podiatric Medicine voted to permanently revoke my license and assess a $20,000 fine. After an investigation, my Medical and Nurse Practitioner licenses were renewed and I am currently practicing in a multi-specialty medical group in Central Florida, using both licenses.

Both U.S. Senators in Florida (Senators Nelson and Martinez) have written letters on my behalf.

I requested my passport be returned to me. Judge Walton issued an order for the prosecutors' office to return my passport. Mr. Volzer contacted them and said the prosecutors' office had lost my passport.

I ask you to do the right thing and vacate the remaining convictions and clear my record. Also, I would ask for you to have my personal properties returned to me.

With regards, I am

Colonel (Dr.) Kinley W. Howard

I was served with a civil suit by two different banks regarding the Savings Bonds related to this estate. The judge ruled in my favor and dismissed the suits brought forth by the banks.

I requested my passport be returned to me. Judge Walton issued an order for the prosecutors' office to return my passport. Mr. Volzer contacted them and said the prosecutors' office had lost my passport.

I ask you to do the right thing and vacate the remaining convictions and clear my record. Also, I would ask for you to have my personal properties returned to me.

With regards, I am

Colonel (Dr.) Kinley W. Howard

UNITED STATES DISTRICT COURT
NORTH FLORIDA DISTRICT

Kinley W. Howard
　　Petitioner

5:06cv179-MCR-MD

vs.

CASE NO: D.C. Cr. 02cr79 (RBW)

United States
　　Respondent

　　　　　　　　　　　　　　　　　　　　　　／

MOTION FOR JUDGMENT of ACQUITTAL AFTER GUILTY VERDICT and DISMISSAL of
INDICTMENT, or in the ALATERNATIVE, A NEW TRIAL WITH CHANGE of VENUE

　　NOW COMES Petitioner Kinley W. Howard and moves this Court to
set aside the Verdict of Guilty returned against him on September 5, 2002,
and the Court Order the entry of Judgment of Acquittal of any offense
charged in the Indictment(s) against said Defendant (Petitioner) in
accordance with the Motion and Supplementary Motion(s) for Judgment of
Acquittal made by the Defendant at the close of all evidence. Also,
Petitioner moves the Court to Dismiss the Indictment(s) with Prejudice.

　　In the alternative, pursuant to Rule 2255 of the Court, the
Petitioner moves the Court to set aside the Verdict of Guilty returned
against him on September 5, 2002, and grant him a New Trial with a change
of Venue to North Florida for the following reasons:

Where Defendant has been tried and convicted and his conviction has
been affirmed on Appeal, Motion for a New Trial is addressed to the
discretion of the Court. U.S. v Tremont, C.A. Mass. 1971, 438 F.2d 1202
(1971).

In 1948, Ahrens v. Clark, The Supreme Court held that jurisdiction lies
exclusively in the single federal judicial district in which both the
custodian of the prisoner and the prisoner reside. See Braden v. 30th
Jud. Cir. Ct., 410 U.S. 484, 499-500 (1973). Braden held that a federal
court with jurisdiction over the custodian of the prisoner has personal
jurisdiction over the petition even if the petitioner is incarcerated
outside that court's jurisdiction. Branden v. 30th Jud. Cir. Ct. supra,
410 U.S. at 494-495; Demjanjuk v. Meese, 784 F.2d 1114. 1115 (D.C. Cir.

1986). In most circumstances, Federal District Courts outside the state
in which the custodian of the petitioner resides do not have personal
jurisdiction over motions brought by the petitioner. Brittingham v. U.S. 982
F.2d 378, 379-80 (9th Cir 1992); Guerra v. Meese, 786 F.2d 414, 415-17 (D.C.
Cir. 1986); Chatman-Bey v. Thornburgh 864 F.2d 804, 810-11 (D.C. Cir. 1988).
Even where dual jurisdiction has been declared, the courts lean toward
trials and rulings in the state of residence. Purette v. Lockhart, 927 F.2d
366, 366-67 (8 Cir. 1991); Bozeman v. Lambert, 587 F. Supp. 1021, 1023 (M.D.
Ala 1984), aff'd, 762 F.2d 1022 (11 Cir. 1985). The Courts have commonly
transferred jurisdiction on grounds of convenience. Braden v. 30th Jud. Cir.,
410 U.S. 484, 499 n.15 (1973); U.S. ex. rel. Meadows v. New York, 426 F.2d
1176, 1183 n.9 (2nd Cir. 1970).

Further proceedings in the remote D.C. jurisdiction have and will severely
prejudice the Petitioner; did create extreme hardship (forum non conveniens)
for the Defendant/Petitioner to present necessary witnesses, documents,
evidence etc. and will severely inconvenience Petitioners' Florida counsel
and create a burden of unnecessary costs. Additionally, Florida Courts are
better prepared to deal with and issue rulings on issues regarding Florida
properties, which are involved as a part of this case.

Therefore, this Defendant/Petitioner's VI Amendment of his Constitutional
rights have been violated. Further proceedings in the D.C. District should be
construed as continued violation of these rights. The D.C. District Court
clearly lacked jurisdiction to indict, bring to trial or seize properties owned
by the defendant.

It is uncontested, the Northern Florida Circuit is less burdened than the
D.C. Circuit. Therefore, unnecessary delay will be avoided in the interest
of justice and the case load shared. Starves v. McGuire, 512 F.2d 918, 932
(D.C. Cir. 1974, in re Chessar, 987 F.2d. 156, 159 (5th Cir. 1990); Bell v.
Watkins, 692 F.2d 999, 1013 (5th Cir. 1982).

The District Court, District of Columbia was without proper venue or
jurisdiction to arrest, indict or bring to trial the Defendant/Petitioner
on Money Laundering charges under USCS 1957. U.S, v. Cabrales 524 U.S. 1,
141 L.Ed. 2d 1, 118 S.Ct. 1772 (1998). The indictment
charged that from July, 1996, through December, $_{1997,}$ Kinley W.

Howard devised a scheme to defraud the heirs of the Estate of Mildred Powell
by transferring movies from Washington, D.C., to estate accounts

in Florida. It was alleged that he later transferred funds from these
estate accounts in Florida into his business and personal accounts in
Florida. There was no allegations or proof he personally transported
these funds from D.C. to Florida.

Both the Federal Constitution and Rule 18 of the Federal Rules of Criminal
Procedure requires a person to be tried for an offense where the offense is
committed. Since the money laundering counts in question occurred in
Florida, and none of the alleged money laundering acts were committed in
D.C., and since it was not alleged that Kinley W. Howard personally
transported the money from D.C. to Florida, the District Court in D.C. was
without jurisdiction to indict and try the case. If
at all, the case should have been tried in Florida (Northern District),
the residence of the defendant.

The lack of jurisdiction over the subject matter is not subject to waiver
and may be raised at any time. U.S. v. Heath C.A. Or. 1974, 509 F.2d 16.
It is the duty of a Trial Court to grant a New Trial, where a witness at
the trial admits on oath that he committed perjury, or even that
he was mistaken in his testimony, provided such testimony related to a
material issue and was not merely cumulative. Martin v. U.S., C.C.A. FLA.
1927, 17 F.2d 973, certiorari denied 48 S.Ct. 20, 275 U.S. 527, 72 L.Ed.
407.

Special Agent Damien Platosh under oath at trial, admitted he misrepresented
crucial facts to the Grand Jury regarding the Defendant having his mothers'
Power of Attorney/ Petitioners (Defendants) case differs from the above case
in that there were no other witnesses or affidavits before the Grand Jury to
concur or deny Agent Platosh's statements during testimony. The Defendant

was not asked or allowed to testify before the Grand Jury. Therefore,
crucial information was withheld from the Grand Jury. U.S. v. Fields, 592
F.2d 638 2 d Cir 1978). This withheld information was a crucial issue with
the Grand Jury in issuing the Indictment and during the trial with the
prosecutors repetitively referring to the Defendants lack of possessing a
Power of Attorney for his mother, when indeed he did possess his mothers'
Power of Attorney. With this vital information, the Grand Jury may have not
issued an indictment. The Court should note the Defendant was not charged
with forgery. therefore, the indictment and verdicts should be vacated due

to insufficient/incomplete information being submitted to the Grand and
Trial jurors. U.S. v. Guyette, 382 F. Supp. 1266 (1974).

In addition, Agent Plates testified to more than that of a Summary
Witness (see trial transcript). Therefore, Agent Platosh's testimony to
the Grand Jury and the several days of testimony during the trial was
perjuries and prejudicial to the Defendant and crucial in obtaining the
indictment and conviction of the Defendant. His testimony should be
impeached, the indictment dismissed and the guilty verdict vacated. U.S.
v. Pascal 496 F. Supp. 313 (1979), <sup>U.S.</sup> V. Gross 511 F.2d 910 (1974); U.S.
v. Gloria 494 F.2d 477, 478 (1974). It appears the Court never ruled to
allow Special Agent to sit at the prosecution table during the trial then
testify. The Defendant/ Petitioner can find no evidence in the Appendix
of the Appellate Briefs whereby the Court ruled on the Motion (See
Appellate Appendix p. 7, #28 7/22/02). Due to the above, this Petitioner
requests the entire testimony of Agent Platosh be impeached.
The Court erred in not declaring a mistrial due to Prosecutorial
misconduct. A Prosecutor is required to maintain a high standard of
conduct in the performance of his/her duties, and in a proper case
his/her conduct may require a mistrial. U.S. v. Schartner 426 F.2d 470
(3d Cir 1970).

The Prosecutors, Judith Koslowski and/or Linda McKinney both or
individually blurted out inappropriate comments during the trial and
in the presence of the jury during the defendants testimony. This
inappropriate behavior required the trial Judge Reggie B. Walton to
strongly (emphasis added) admonish the Prosecutors
to include a threat of jail time if further inappropriate conduct
occurred (see trial transcript). Therefore, the Court objected to the
behavior of the Prosecutors. U.S. v. Avella, C.A.N.J. 1968, 395 F.2d
762, certiorari denied 89 S.Ct. 113, 393 U.S. 837, 21 L.Ed. 2d
108, 353, F.2d 789, 790 (1965).

The Prosecutors are guilty of Selective Prosecution. The Defendants own
attorneys stated this case would have never been prosecuted if it were
not for the fact the case was referred by a Superior Court Probate
Judge Cheryl Jones. This referral was prompted by the
Personal Representative later this Defendant/Petitioner not presenting to
the Court for a Civil Hearing. Judge Jones would not allow Howards'
attorney at the time (Joel Anders, Esq.) to speak and inform the Court that
he had told Howard he did not have to be present for the hearing.
Therefore, this initial demonstration of ineffective counsel resulted in a
referral of this matter to the Department of Justice and

( 5

subsequent indictment, trial and wrongful conviction.

The Prosecutors erred in violating the Defendants/Petitioners Con-
stitutional Rights by not disclosing to the Court the Defendant had
several telephone conversations with them and F.B.I. agent s) prior
to being indicted, all the while knowing an indictment was forthcoming. These
conversations were without the presence of or being represented by a competent
attorney. Therefore, this indictment and verdicts should be vacated with
prejudice due to the violation of the Defendants/Petitioners 5th and 6th
Constitutional Admendment Rights. Several telephone conversations occurred via
telephones in his medical office. Mr. Frankie Wood (from Myrtle Beach, South
Carolina) observed and listened to these conversations via speaker phone and/or
extension phone lines. Several of these conversations were taped on a micro
cassette recorder. A review of the medical office phone records will clearly
demonstrate the dates and times of these conversations. The
Defendant/Petitioner alleges government agents, at the direction of the
prosecutors, used electronic surveillance equipment on the Defendant prior to
indictment and trial.

An individual claiming to be a Private Investigator (he presented me with a
business card stating his name and representing himself as a Private
Investigator), was confronted by me,due to suspicious behavior, in my medical
office parking lot one morning. This incident was witnessed by three or four
office staff personnel. The individual was sitting in a late model black
Chevrolet Malibu or Oldsmobile Cutlass. The windows wee covered with extremely
dark tint. When I tapped on the window and he rolled it down, I observed
elaborate electronic listening devices, paperwork and a camera, among other
items. The individual was a white male in his late 20's or early 30's, who
claimed to be investigating a child abuse case across the street. The office
staff member said I knew there were no young children living across the street
from our medical office. He left after several days and did not return. Also,
there were strange clicks noted on my office and home telephones shortly after
a conversation began. My case differs from the case cited in that I have
witnesses to the above activity. U.S. v. McCord, 1974, 509 F.2d 334, 166 U.S.
App. D.C. 1, certiorari denied 95 S.Ct. 1656.

A criminal indictment must be a plain, concise and definite written
statement of the essential facts constituting the offense charged.

This indictment is weak, poorly written and erroneous. For example,
Defendant's property was seized illegally under Title 18-1956 although the
Defendant was only charged with Title 18-1957 (see indictment). District
Courts are vested with supervisory power to dismiss indictments when inter
alia, Prosecutorial misconduct has or might have interfered with the
fairness and impartiality of the Grand Jury.

U.S. v. Gold, 470 F. Supp 1336 (1979). The above redundantly demonstrates
Prosecutorial misconduct at the highest level resulting in the abuse of power
and infecting the due process rights of the Defendant to such great extents
that the result demonstrates a total prejudicial process against the

defendant from the beginning.

The Court appears to have erred in not having the Defendant personally waive
his right, before the jury, to return to Court to hear and respond to Jury
notes, thereby violating the Defendant's Constitutional Rights. The Court
accepted and responded to Jury notes that clearly indicates the status of the
jury's conditional vote at the time: "If we find the Defendant guilty      "
The jury is charged not revealing to anyone, including the trial Judge, the
status of any portion of a verdict. Mullin v. U.S., 1966 356 F.2d 368 123
U.S. App. D.C. 29. The Court erred in accepting a verdict whereby one juror
declared he was sick, but returned to complete the case and deliberations
although he was seen as having his head in his hands and slouching in his
chair during testimony and jury instructions, demonstrating behavior con-
sistent with being ill. U.S. v. Taylor 507 F.2d 166 (1975). The Court erred
in failing to give the jury instructions regarding the Defendants reliance
upon advice of Counsel and good faith in handling estate matters, given to
the Defendant by his Florida attorney Tony Fiorentino, Esq. (Mr. Fiorentino
testified during the trial-see trial transcript).

The Courts' failure to instruct the jury these defenses required
acquittal, tremendously infected the entire trial and demonstrated
prejudice against the Defendant resulting in an erroneous conviction.
Flynn v. U.S. 87 Fed 3rd 996 (1996).

The Court erred in not requiring a D.N.A. test to support or deny
evidence presented by Defendant that Mildred Powell may be the

biological mother of said Defendant/Petitioner. Defendant presented this possibility to the Court in a letter addressed to Judge Reggie B. Walton, dated December, 2002 (refer to Court file). In this letter, the Defendant/Petitioner also informs the Court he received multiple doses of Versed (a drug) during the course of two surgeries shortly before he completed a deposition relating to the crimimal case. The Defendant/Petitioner pointed out to the Court a well known side effect of the drug (Versed) is amnesia, including retrograde amnesia. The Petitioner now points out to the Court he also has been using Statin drugs for a number of years that were prescribed to control his elevated blood cholesterol levels. The Petitioner was only recently made aware of Statin drugs causing memory loss (see enclosed newspaper article). Prosecution used the deposition during trial to allege to the jury, the Defendant was intentionally avoiding answering questions during the deposition. The Petitioner now alleges he was temporarily mentally impaired due to the above drugs singularly and in combination, to accurately answer questions during this deposition. For this reason alone, the deposition should be suppressed as evidence in the interest of justice.

The trial Court erred in reversing its ruling on allowing the Defendant to present evidence of his attempt to settle the estate matters since 1998. Prior to trial, the District Court ruled the Defendant could present this evidence to the jury during trial. The Defendants' counsel presented this plan to produce such evidence through testimony during the trial to the jury during his opening statements. This evidence would thereby unequivocally (emphasis added) rebuke the governments allegations of intent to defraud the estate. The timing and reversal of this byling by the District Court, undeniably prejudiced the jury against the Defendant. The Court should, at this time, have declared a mistrial due to obvious irreparable (emphasis added) damage to the Defendant/Petitioner. Furthermore, the Defendant was not allowed to present testimony from witnesses, ie. his other attorneys, Antony Fiorentino, Esq. and Larry Fischer, Esq.. The jury was left withthe impression, unaware of the Courts reversal in ruling, Defendants' Counsel misrepresented facts to them during his opening statement. This fact was argued before the Appellate Court along with the Money Laundering Counts were used merely as a vehicle to obtain a conviction of the Defendant on the Mail/Wire Fraud counts, well knowing the Court would vacate the guilty verdict

regarding the money laundering counts if and when the jury rendered
a guilty verdict. The jury did find the Defendant guilty of three counts of
money laundering. The trial Judge overturned the jury verdict on all money
laundering counts based on his opinion the evidence did not substantiate the
charges of money laundering. This is a total abuse of power and demonstrates
severe prejudicial error that should be reversed; in the interest of
justice the entire indictment and conviction should be vacated.
 The Defendant was further prejudiced and the District Court erred by
not allowing the complete testimony of Kenneth Loewinger, Esq. (successor
personal representative) to proceed on cross examination. Further testimony
by Mr. Loewinger would have exposed to the Court that Mr. Loewinger had
threatened the Defendant with criminal prosecution over a civil matter
(Extortion) during communications prior to Defendant being indicted. In
addition, Defendants' counsel would have bee able to expose this information
and demonstrate to the jury the tremendous effort by the Defendant to work
with Mr. Loewinger and prevent criminal action thereby avoiding and
expensive and wasteful trial (see letters to and from Kenneth Loewinger,
Esq. and Dr. Kinley W. Howard on file with Defendants' counsel Harvey
Volzer, Esq.).

The Court erred in the Statement of Reasons (page 24 Appellate Appendix) in
checking the sentence is within the guideline range, that range does not
exceed 24 months - _ _ _. Defendants sentence is 46 months. Regardless,
Defendant is being incarcerated beyond his sentence. due to the 8
enhancement points applied by the trial Judge and not recommended or
mandated by the jury (the Appellate Court has mandated 2 enhancement be
removed before the Blakely v. Wash Supreme Court ruling). Ralph Howard
Blakely, Jr. V. Wash. 02-1632, 111 Wash.App 851, 47 Pad 149,
S.Ct. certiorari granted) (see Appellate Court opinion). These erroneously
applied enhancements is further demonstration of the myriad of errors and
prejudice against the Defendant that has infected the entire process of this
case thereby violating this Defendants' Civil and Constitutional Rights and
prevented his receiving a fair and impartial trial. This is reversible error
requiring vacating the indictment and conviction. The Constitution declares a
Defendant has a right to trial by a jury of his peers. Defendant notes that
other doctors were struck from the jury pool whey they acknowledged they would
tend to believe the testimony of a doctor over a non doctor.
The Defendant/Petitioner notes the 12 member jury plus 2 alternates

(9)

contained 12 Afro-Americans and 2 Caucasians. Defendant believes the Grand Jury contained a similar make-up and was biased against the Defendant due to his being Caucasian, not being born or living in the local area and/or had no living relatives in the local area. Therefore, the Defendant experienced racial prejudice and was thus not tried by a jury of his peers. Defendant/Petitioner should be allowed to raise this issue now. Brooks v. U.S. 416 F.2d 1044 (1969); U.S. v. Caesar D.C. Wis. 1974, 368 F. Supp. 328, affirmed 519 F.2d 1405; Gaither v. U.S., 1969, 413 F.2d 1061, 134 U.S. App. D.C. 154; IN RE GRAND JURY 79-01, 489 F. Supp. (1980).

The Defendant/Petitioner was resentenced on August 30, 2004 to a reduced sentence of 37 months. The Court erred in rendering the sentence during the hearing. With the two enhancement points removed by the Appellate Court, the maximum sentence should have been 36 months under the guidelines. The Defendant and Counsel was shocked and disappointed the Court did not re-sentence him to the low end of the range as the Defendant has a perfect conduct record and outstanding record since being incarcerated. In addition, he has completed Spanish I & II, Portuguese, Computer Applications Courses as well as other courses in addition to the pre-release courses. A copy of the Defendants/Petitioners transcript and certificates of completion are on file with Counsel (Harvey Volzer, Esq.). Also, the Court erred in not awarding relief under the Blakely case ruling (see supra). This contradicts rulings by fellow judges in the the D.C. District Court who are awarding relief to inmates/defendants pending the Supreme Court ruling as the case pertains to federal cases. The Court did initially offer the Defendant/Petitioner to be released on his personal recognizance pending the Supreme Court ruling. Due to a delay in getting an address for the Defendant/Petitioner to be released to, the Court change its mind and the defendant remains incarcerated as an innocent man. The Court erred in allowing the indictment to be revised and renumbered after the case had gone to the jury for deliberation: see note dated 9/03/2004 #47 on page 10 of appendix relating to the docket sheet. Again, the Defendant's Constitutional Rights were violated. This is another of the myriad of errors and prejudice regarding this entire process. The Court erred in attempting to have millions of dollars worth of

property forfeited in a civil suit: Civil Action No. 01-706 (RBW).
The entire estate valued at less than $200,000 was charged to the
Defendant/Petitioner as restitution although evidence uncontested and
admitted during trial clearly demonstrated the Defendant/Petitioner paid the
Decedents taxes, funeral bill, including grave site bill and others, before
he repaid monies owed to him and his wife, his medical office and Kinco
Aviation, Inc.. Evidence was admitted showing Mildred Powell owed a good
deal of money to these entities for work completed on her behalf. In
addition, the Court estimated a value of the jury and applied an amount to
that portion or the estate that the Defendant/Petitioner donated to
Goodwill Industries. The fact that the Defendant/Petitioner donated this
jewelry plus furniture, clothing and other items belonging to the decedent
to Goodwill Industries as instructed by the decedent was uncontested during
the trial.

It should be noted the Defendant was accused of using estate funds
to pay of the aircraft belonging to Kinco Aviation, Inc which was
owned by the Defendant/Petitioner and his family. Documentation,
proved the aircraft was paid off two years before he was involved
as personal representative of the estate. In addition, the Defendant/
Petitioner was accused of using estate funds as a down payment to purchase
property in Gulf County Florida. The fact is those funds
were obtained when the Defendant/Petitioner and his wife sold property to
Dr. Randall Humphries. It is a mute point as the Court awarded at
the initial sentencing, the Defendants/Petitioners portion of the estate,
$31,000. The claimed amount used to purchase the Gulf County property was
$28,000. Again, another prejudicial violation of the Defendants/ Petitioners
Constitutional right. It should also be noted the Gulf County property was
sold to developers in Alabama. The Court has refused to allow the closing to
proceed on that property thereby

harming innocent third party individuals: the developers, the Defendants
wife and children, the realtor and realty company who sold the property and
the potential buyers who would build and live on the property. This civil
suit should be dismissed immediately and the properties returned to the
Defendant/Petitioner and his family and they should be compensated
accordingly.

The Defendant/Petitioner believes he has received ineffective and

improper representation by Counsel. This belief is substantiated by the fact
Counsel did not use the impairment by the drug Versed during the trial.
Counsel has not taken action at the request of the Defendant by filing a
motion with the Court for vacating the conviction under Rule 33, re-
questing a new trial based on new evidence such as the memory loss as-
sociated by the Statin drugs which the Defendant takes. Defense Counsel
(Harvey Volzer, Esq. & Brian Shaughnessy, Esq.) has not followed through
with obtaining a DNA test to prove/disprove Mildred Powell is or is not the
biological mother of the Defendant/ Petitioner, although such request has
been made to counsel on multiple occasions. Counsel failed to file a Rule
35 for a reduction of sentence in a timely manner (see enclosed letter) [1].
Counsel failed to file an en bane motion for rehearing with the Appellate
Court after asking the Defendant for permission to file and Defendant gave
written permission and requested counsel for counsel to proceed
with such[2].

Counsel has failed to communicate with Defendant in a timely manner although
many attempts have been made and requested for such communication [3]. When
communication was received from counsel, the communication was presented in
an insulting and angry manner [4].

Counsel failed to request a mistrial after the prosecution team demon-
strated improper behavior during the trial and in front of the jury. This
behavior, as previously noted, required the trial Judge to warn the
prosecutors and threaten them with jail time.

Counsel failed to file for a change of venue/jurisdiction with the Court
before trial although Defendant questioned why he was being tried in D.C.
and, not in Florida.

Counsel did not file an appropriate and complete Appeal i.e. not finding
the U.S. v. Cabrales case regarding venue/jurisdiction etc. Counsel has
failed to file for an immediate release of the Defendant based on the Blakely
v. Washington case (supra).

Counsel has failed to file this requested Section 2255 form and
Motion-as requested by the Defendant.

Counsel was unprepared during the resentencing hearing that took place on
August 27, 2004 and was continued to August 30, 2004. Had Counsel been
prepared, Defendant/Petitioner would have been released at that time.
Subsequently, Defendant/Petitioner has suffered additional

(12

unjust incarceration.

A number of the above issues were argued by Counsel to the Appellate Court although he now says this motion is baseless. Defendant/Petitioner personally likes his current attorneys, and until recently believed he was receiving proper Counsel. However due to discovery plus the actions (recent) of Counsel strongly suggest to the Defendant/Petitioner he has not received the proper representation promised by Counsel.

## SUMMARY

Trial testimony shows that Dr. Kinley Howard had been performing work for Mildred Powell at her request for a number of years, and Mildred Powell had agreed to pay for those services/work performed plus expenses. Dr. Howard had delayed offered payments by Mildred Powell for those services due to her personal expenses related to a previous hip surgery and her scheduled other hip plus extensive dental surgeries with expected additional personal costs to her.

Dr. Howard spent thousands of dollars of his and Mrs. Howard's personal funds, those of his medical office and Kinco Aviation to provide those requested services/work for Mildred Powell. He expected to be reimbursed. Unfortunately, Mildred Powell died before she could complete a will or trust to assure reimbursement to Dr. and Mrs. Howard. Mildred Powell left written and verbal instructions to and for Dr. Howard. Dr. Howard along with Lillian Howard were appointed as co-personal representatives of Mildred Powell's' estate by the D.C. Probate Court. Lillian Howard died several months after their appointment. Dr. Howard continued to serve **as** the sole personal representative until he was removed. Dr. Howard tried unsuccessfully to obtain counsel from several D.C. Probate attorneys to assist with the estate. One such attorney, Michael Curtin, Esq. advised Dr. Howard to probate the estate himself, as it would be an unsupervised estate by the Court, and therefore should be a rather simple matter. Dr. Howard and Lillian Howard (until her death), proceeded and complied with the law to the best of their ability by paying Mildred Powell's' owed federal taxes, her funeral expenses and other bills then reimbursing he and Mrs. Howard, his medical office and Kinco Aviation the money owed to them. Dr. Howard relied on assistance and advice from his attorney in Florida, Tony Fiorentino, Esq. and his Florida accountant

(13

Charles Weathersby, C.P.A., with estate matters. Dr. Howard admits he
made mistakes due to the vague and sometimes contradictory D.C. Probate laws.
However, at no time did he have any criminal intent regarding any action in
probating the estate. His intentions were aimed at complying with the Probate
laws and carrying out the wishes of the decedent. Dr. Howard became the target
of hostile relatives (other heirs) who hired an attorney after they felt they
did not receive all the money fro the estate to which they were entitled. These
same relatives never complained to Dr. Howard regarding estate matters. In fact,
they had failed to answer written inquiries and telephone calls from Dr. Howard
due to the fact they were aware he was assisting Mildred Powell investigate
wrongdoings by them regarding the Powell farm and home place in South Georgia.
Dr. Howard retained an attorney from D.C. (Joel Anders, Esq.) after he was
accused of possible criminal misconduct. Mr. Anders failed to provide adequate
representation. Otherwise, no criminal charges would have ever been filed
against Dr. Howard. In addition, Mr. Anders committed malpractice by failing to
file papers with the Court although he had been paid and agreed to represent Dr
Howard. Dr. Howard terminated Mr. Anders and retained counsel from Harvey
Volzer, Esq. of Washington, D.C. An indictment was filed against Dr. Howard
charging mail fraud, wire fraud and money laundering. Although accusations of
forgery, embezzlement and fraud on the Court was rendered, no formal charges of
these accusations were made.

Mr. Volzer reviewed the evidence, indictment with one of his partners,
Brian Shaughnessy, Esq.. The decision was made to take my case to trial.
Dr. Howard believed in the legal system and trusted the advice and
counsel of **his** current attorney and thereby proceeded to trial. Dr. Howard was
also sure of his innocence.

After a one month delay due to the prosecution not 'Being prepared, the trial
began. Three weeks later, due to a multitude of prejudicial errors and
reversal of previous rulings, perjuries testimony by a prosecution witness,
inability to present a complete and adequate defense, a confused and
inadequately informed jury, he was found guilty of all charges. There are
serious concerns regarding the fairness of this Defendants trial. The Court
shortly after trial, reversed the jury's verdict on the multiple counts of
the most serious charges; money laundering. Dr. Howard through counsel, filed an
appeal.

Three months later, Dr. Howard was sentenced to 46 months imprisonment

(14)

As a result of 8 enhancement points applied by the Court and not recommended by the jury. The Court at sentencing imposed restitution for the full amount of the estate plus interest, community service, a fine and supervised release. The Appellate Court failed to address most of the issues in the Appeal. However, the Appellate Cour did recognize an error in the addition of 2 of the enhancement points and removed them. Dr. Howard was resentenced August 30, 2004, to 37 months of incarceration. This was another error by the Court. Counsel filed an emergency appeal based on this error, the Court not awarding relief under the Blakely ruling and offering relief for the maximum amount of sentence redction as the Defendant/Petitioner had a perfect conduct record, outstanding work record and completed multiple educational courses while being incarcerated.

Since his release from incarceration, Dr. Howard returned to active drilling status with the Army Reserve, was promoted to Colonel and completed almost 30 years of service in July, 2006. Petitioner has applied for an extension of his active Army Reserve service and has volunteered for a foreign tour if needed by the Army. Currently, Dr. Howard has joined a multi-specialty group of physicians in central Florida serving as both a Podiatrist and Anesthetist in the group.

Our legal system thus far has failed Dr. Howard. Our legal system through this Court has an opportunity and obligation to correct this travesty and clear Dr. Howard's record.

**THEREFORE**, this Petitioner prays this Court will grant this Motion. In addition, Petitioner requests all relief available to him, his family, medical office and Kinco Aviation, Inc. to the fullest extent of the law.

Respectfully submitted,

CoL (DR) Kinley W. Howard

**UNITED STATES DISTRICT COURT**
**NORTH FLORIDA DISTRICT**

Kinley Howard
    Movant

5:06-cv-179-MCR-MD

    vs
                               CASE NO: 02cr79 (RBW)
                                     civ01-706 (RBW)

United States
    Respondent

_____/

**SUBSEQUENT MOTION TO EXPAND THE RECORD OF 28 USC § 2255 WRIT of HABEAS CORPUS**

    **NOW COMES** Movant Kinley Howard respectfully requesting this Court accept this subsequent Motion and Affidavit to expand the record of 28 USC § 2255 Writ of Habeas Corpus previously filed along with an additional Motion to expand the Writ. Also, Movant now submits an Affidavit attesting prejudicial bias by the trial Judge and request for discovery and appointment of counsel.

I.    Under 28 USC § 2255 Rule 4 (b): Although Congress intended the trial Judge to preside at a Section 2255 hearing, Carvell v. United States, 173, F.2d 348 (4th Cir. 1949), subsequent legislative history indicates Congress <u>does not</u> want the trial Judge to preside at a Section 2255 hearing.

    The Court of Appeals for the First Circuit has held that a Judge other than the trial Judge should rule on the § 2255 Motion. Halliday v. United States, 380 F. 2d 270 (1st Cir. 1967).

    Movant now files the accompanying Affidavit alleging bias by the trialJudge Reggie B. Walton (District of Columbia) and request Judge Walton be disqualified to hear and rule on this Section 2255 Motion. Webster v. United States, 330 F. Supp. 1080 (1972). In additon for reasons stated in the Section 2255 Motion (Jurisdiction, Venue etc.),

Movant respectfully this Court hear and preside and rule on this
Section 2255 Writ of Habeas Corpus Motion.

II.   To support this claim of alleged bias, Movant invokes his right
for the Process of Discovery. Movant requests pursuant to 28 USC Section
2255, Rule 6 (b), the admission of all transcripts of related civil and
criminal hearings (pre, intra and post trial) to include the sentencing
and resentencing hearings along with any notes and correspondence of
any kind from any and all parties involved including but not limited
to the trial Judge, Prosecutors, Defense Counsel(s) (Joel Anders,
Harvey Volzer, Brian Shaughnessy and Larry Fischer) and witnesses; also
associate related attorneys Antony Fiorentino in Pensacola, Florida and
Jeff Whitton in Panama City, Florida.

III. Pursuant to 28 USC Section 2255, Rule 6 (a), Movant requests this
Court appoint Counsel for assistnace under 18 USC § 3006 A (g).

   **WHEREFORE** Movant prays this Court accept this subsequent Motion
and Affidavit in support of the 28 USC Section 2255 Motion and Initial
Motion to Expand the Record.

                              Respectfully submitted


                              Kinley Howard, Pro Se

## AFFIDAVIT OF ALLEGED BIAS BY TRIAL JUDGE AGAINST MOVANT

**NOW COMES** Movant Kinley Howard alleging severe prejudicial bias by Judge Reggie B. Walton who presided over, to date, Cases 02cr79 (RBW) and civ01-706 (RBW) in the District of Columbia.

Judge Walton by his actions and rulings has repetively demonstrated repetitive severe prejudicial bias not only against Movant, but against Movants immediate family members (wife-Judy; children-Kinley, Jr. and Lauren).

Judge Walton apparently met ex parte, according to Movants Defense Counsel Brian Shaughnessy and Harvey Volzer, prior to the criminal trial and informed the Government Prosecutors the evidence to support the charges of multiple counts of Money Laundering was not present, and if the government proceeded with those charges and Movant/Defendant was convicted, he (Judge Walton) would overturn the jury verdict relative to those charges. The jury convicted Movant/Defendant on those multiple counts and Judge Walton subsequently overturned the jury verdict relative to those multiple counts. Judge Walton allowed these charges to be used as a vehicle to assure Movant/Defendant was convicted on the Mail/Wire Fraud charges. Movants Defense Counsel, Harvey Volzer, polled the jury after the trial and found the jury wanted to acquit Movant/Defendant on the Mail/Wire Fraud charges and find Movant/Defendant guilty of the Money Laundering charges, but did not understand they could split their verdict. Therefore, the jury made a mistake by not understanding the law and/or evidence to support the money laundering charges nor their ability to split their verdict. Therefore, intentionally abused his power to bias the jury into wrongfully convicting Movant/Defendant, by not giving and making sure the jury understand the jury instructions, and/or vacating the entire conviction or as a minimum declaring a mistrial.

Judge Walton abused his power and demonstrated bias against Movant/ Defendant by reversing his decision to allow Defense Counsel to present evidence to the jury that would have exonnerated this Movant/Defendant of all charges, after Defense Counsel had stated to the jury in his opening statement, such evidence would be presented. The jury was un- aware Judge Walton had reversed his decision to allow Defense Counsel to present this evidence. Therefore, the jury was left with the impres- sion no such evidence existed. Also, Judge Walton refused to allow Defense Counsel to present as Defense Witnesses attorneys Antony Fiorentino and Larry Fischer, which would have further exonnerated Movant/Defendant of all charges.

Judge Walton allowed the indictment to be retyped after the criminal case had been presented to the jury for deliberations. Movant/Defendant believes this biased him and favored the government and further indicated judicial bias and prejudice.

Judge Walton failed to declare a mistrial after Government Witness FBI Agent Damien Platosh admitted under oath he misrepresented facts to the Grand Jury. Mr. Platosh was the only known witness before the Grand Jury.

Movant/Defendant did not personally waive his rights to return to hear and respond to jury notes presented to the judge during the jury deliberations.

Judge Walton has further biased Movant/Defendant by failing to request a DNA test to prove/disprove Mildred Powell is the biological mother (these cases are the result of Movant/Defendant serving as the Personal Representative of Mildred Powells Estate). There is evidence suggesting the possiblity of Mildred Powell being the biological mother of the Movant/Defendant, and was presented to Judge Walton in a letter sent to him in December, 2002.

Judge Walton was apparently supervised by Movants' Counsel Brian Shaughnessy for approximately 10 years when they both worked at the Department of Justice. This apparently was an adversarial relationship. Brian Shaughnessy has made numerous derogatory comments to me regarding the qualifications  of Judge Walton. Mr. Shaughnessy and Harvey Volzer have both told me on numerous occasions that Judge Walton does not like me personally. Movant feel some of Judge Walton's biased actions and rulings may be the result of this former relationship between Defense Counsel and himself.

During the resentencing in August, 2004, Judge Walton failed to award the low end of a sentence for Movant despite Movant's having a perfect conduct and work record and completing numerous educational courses during incarceration. In fact, Judge Walton failed to allow the minimum 12 months reduction in sentence as Defense Counsel had informed Movant was likely (the range of reduction was 12-16 months). In addition, Judge Walton demonstrated prejudicial bias in contrast to the rulings of fellow judges in the District of Columbia by refusing to award Movant relief under the Blakely v. Washington Supreme Court case ruling (now being heard by the Supreme Court as the Booker & Fanfan cases as the enhancement guidelines relates to federal cases).

Judge Walton has again demonstrated prejudicial bias not only against Movant, but against Movants' immediate family (wife-Judy and children-Kinley, Jr. and Lauren) by reversing his previous decision regarding forfeiture of properties in which they have ownership and the Court is attempting to wrongfully seize. Judge Walton has allowed the sale of one of these properties (the Piper Aztec aircraft) even though final rulings on appeal is pending in the Court (see letter dated December 7, 2004 from Harvey Volzer and FAA website download submitted with first Motion to enhance the Writ previously submitted).

In contrast, Judge Walton has demonstrated bias against the Movant and innocent third party individuals by preventing the closing of the Port St. Joe property on which the Movant and his wife have a valid sales contract. The buyers, developers, Realtors, future home owners on the property as well as the Movant and his family has been unfairly biased by Judge Walton in this ruling.

Now, in the letter from Mr. Volzer to Movant dated December 7, 2004, referenced above, Mr. Volzer indicates he has not filed the appeal as he had informed the Movant believing Judge Walton would possibly re-sentence the Movant to more time of incarceration than previously. This is preposterous and would be a blatant abuse of judicial power. There-fore, Movant is being denied his Constitutional Rights to continue his appeal by Counsel for fear of more time of incarceration than currently ruled by Judge Walton.

I attest under the penalty of perjury, the foregoing document is true to the best of my knowledge.

Respectfully submitted,

Kinley Howard

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                                          5:06CV179/MCR/MD

KINLEY HOWARD

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a letter to the clerk, a § 2255, a motion for judgment of acquittal after guilty verdict and dismissal of indictment, or in the alternative, a new trial with change of venue, a subsequent motion to expand the record of 28 U.S.C. § 2255 writ of habeas corpus and an affidavit of alleged bias by trial judge against movant. Defendant was convicted of mail fraud, wire fraud and money laundering in the United States District Court for the District of Columbia in September of 2002 in case number 1:02cr79-RBW.[1]  It appears from the record that he was originally sentenced to a term of 46 months imprisonment, which was reduced on August 30, 2004 to 37 months. Defendant indicates that he was released from confinement over one year ago.  He now seeks judgment of acquittal and dismissal of the indictment or a new trial in a different venue, presumably this court.  He makes various claims of error in the proceedings against him, and alleges that his counsel was constitutionally ineffective.  He seeks review in this court because he resides in this district, this court has a lesser workload than the District of Columbia, and because the allegedly unlawful acts took place here.  He also claims that the district judge in the District of Columbia is biased against him.

---

[1]The corresponding civil forfeiture case was 1:01cv706--RBW.

Defendant has previously sought to challenge this same conviction in the Northern District of Florida.  See case 4:05mc5-WCS.  At that time, the direct appeal was still pending in his criminal case.  Defendant was advised that if he sought § 2255 relief, he should file his motion **in the sentencing court** after conclusion of the appeal.  (Case 4:05mc5-WCS, doc. 1).  He was also advised to be mindful of the statute of limitations for filing § 2255 motions.  The court characterized the defendant's submissions as "misdirected § 2255 pleading[s]," returned the pleadings to him without docketing, and directed the clerk to send a copy of the order to the Clerk of the United States District Court for the District of Columbia.  That order was entered on February 2, 2005.

The defendant's situation has changed in that he has been released from custody and his appeal is no longer pending since the United States Court of Appeals for the District of Columbia Circuit granted his request to dismiss his appeal on September 9, 2005.  (See Case 1:02CR79, Doc. 103).  However, the propriety of this court as a forum for seeking review of the claims raised in his § 2255 motion and other attachments has not changed.  A § 2255 motion is properly brought in the district of conviction, as defendant was informed over 18 months ago in Case 4:05mc5--WCS.  Therefore, the defendant's motion should be transferred to the U.S. District Court for the District of Columbia.[2]

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence and accompanying pleadings be TRANSFERRED to the United States District Court for the District of Columbia.

At Pensacola, Florida, this 12th day of September, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[2]Because defendant's pleadings were filed just under one year from the date his direct appeal of his criminal case was dismissed, the court finds that transfer, rather than dismissal without prejudice, is the more appropriate remedy.

*Case No: 5:06cv179/MCR/MD*

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Kinley Howard

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS

USA

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

CASE NUMBER 1:06CV01814

JUDGE: Ellen Segal Huvelle

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 10/16/2006

### II. BASIS OF JURISDICTION
(PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR** ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☒ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☒ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

---

**V. ORIGIN**

☐ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☒ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☐ YES    ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

**DATE**    **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

